SCOTT E. BRADFORD, OSB #062824
United States Attorney
District of Oregon
**LEWIS S. BURKHART, OSB #082781**
Assistant United States Attorney
Lewis.Burkhart@usdoj.gov
1000 SW Third Avenue, Suite 600
Portland, OR 97204-2902
Telephone: (503) 727-1000
Attorneys for United States of America

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **3:26-cr-00183-SI** |
| **v.** | **GOVERNMENT'S PRETRIAL DETENTION MEMORANDUM** |
| **GERARDO DELGADO-CORTES,** | |
| **Defendant.** | |

The defendant is charged with possession with intent to distribute methamphetamine and possession with intent to distribute fentanyl, both of which carry a presumption of detention under 18 U.S.C. § 3142(e)(3). He made his initial appearance on June 3, 2026, before Judge Beckerman. Because his retained counsel was unavailable, the Federal Public Defender appeared on his behalf and sought his release. The government opposed release, and Judge Beckerman ordered the defendant detained as a danger to the community, while permitting him to renew his request once represented by retained counsel. ECF 9. The defendant now again seeks release,

**Government's Pretrial Detention Memorandum**                                    **Page 1**

and the government again opposes it, having obtained additional evidence indicating that the defendant continued selling narcotics while on release from Clackamas County.

## I.     Facts

DEA Portland identified the defendant as a drug trafficker in October 2025 after a confidential source ordered fentanyl pills from a suspected dispatcher in Mexico. The defendant delivered more than 300 grams of fentanyl pills to the source. Agents continued investigating the defendant until April 29, 2026, when he was stopped during an unrelated Clackamas County Sheriff's Office investigation.

In the early morning hours of April 29, deputies responded to a suspicious circumstances call reporting three masked individuals walking around an apartment complex after midnight who then left in a white Dodge truck. Deputies located the truck, conducted a traffic stop for a traffic infraction, and identified the defendant as the driver with a female passenger. After learning the defendant's driving privileges were misdemeanor suspended, deputies arrested him.

During an inventory search of the truck, deputies found a small baggie containing approximately four grams of suspected narcotics. When asked, the defendant admitted the drugs were his and stated that everything in the vehicle belonged to him. Deputies continued the search and discovered a reusable shopping bag containing a large quantity of methamphetamine, a large quantity of fentanyl, and a substantial amount of U.S. currency.

/ / / /

/ / / /

**Government's Pretrial Detention Memorandum** **Page 2**



After deputies discovered the large quantity of narcotics, the defendant was interviewed. He admitted that he transports drugs for money and that delivering narcotics is how he earns his income. He also stated that the female passenger had no knowledge of the drugs.

Deputies obtained a state search warrant and seized the narcotics and currency. In total, they recovered approximately 2,280 grams of methamphetamine, 240 grams of fentanyl, and about $15,000 in U.S. currency. The defendant was charged in Clackamas County but was released later that same day after posting $15,000 bail on April 29, 2026. As part of his security release agreement, he agreed to obey all laws and not drive without a valid license. Exhibit 1, p. 2. The federal government then sought a criminal complaint, which was signed on May 1, 2026, and an arrest warrant issued.

The defendant was federally indicted on June 2, 2026, for the April 29 conduct. Later that day, Salem DEA agents conducting surveillance for an unrelated large-scale drug trafficking investigation observed the defendant associated with their target activity and driving away.

**Government's Pretrial Detention Memorandum**                                **Page 3**

Agents ran his information, notified DEA Portland, and moved in to arrest him. The defendant was taken into custody and refused consent to search the vehicle, which was subsequently towed.

On the morning of June 3, 2026, DEA Portland requested a narcotics-detection K-9 to sniff the defendant's truck. The K-9 alerted to the presence of narcotics. Judge Beckerman authorized a federal search warrant for the vehicle and the cell phones inside. Agents did not locate narcotics in the truck but did seize approximately $2,000 in U.S. currency and two cell phones.

The defendant made his initial appearance on June 3, 2026, and sought release. Judge Beckerman ordered him detained, finding that the K-9 alert and the seizure of approximately $2,000 in currency showed he continued dealing drugs while on Clackamas County bail.

Subsequent forensic review of the defendant's cell phones produced additional evidence confirming he continued to sell drugs while on bail. Agents found numerous text messages reflecting ongoing drug trafficking in violation of his $15,000 bail and release conditions. Although the search remains ongoing, agents extracted several illustrative conversations at the government's request.

For example, on May 12, 2026, an unknown user texted the defendant requesting a "halfski," and the defendant replied, "for the half its 400," consistent with the approximate street price of a half-ounce of fentanyl. On May 23, 2026, the defendant sent photographs of money remitter receipts—an established method drug traffickers use to pay sources of supply in Mexico. Preceding those photographs was an image of handwritten notes stating "1 agua" for $1,000 and "3 aguas" for $3,000, which agents believe are coded references to pound quantities of methamphetamine.

**Government's Pretrial Detention Memorandum**                                    **Page 4**

Agents located additional images with the same coded language. Following one such image, the defendant texted a recipient in Spanish, "For Eugene, 4 waters and 3 pieces," and later, "Five waters and five pieces they ask me for also, but I don't know if the dark lady is going to come on time because they are coming from Coos Bay." Based on established slang, agents understand "waters" to mean methamphetamine and "pieces" or "dark" to refer to heroin. In agents' training and experience, these exchanges show the defendant was coordinating a multi-pound transaction involving methamphetamine, fentanyl, and/or heroin.

On May 28, 2026, agents also located messages believed to be from the defendant's significant other expressing serious concern that he continued dealing drugs. She wrote, "You keep selling drugs to keep giving them money so might as well ask them to at least keep your shit." The defendant replied, "I'm serious come get your shit go take them to Leann's you took her to Cali when you. Would go pick up drugs would pay for everything so you can take her your shit I don't need to have your shit here."

## II.     Criminal History

| Date | Jurisdiction/Case Number | Charge | Disposition | PV's/FTA's |
|------|--------------------------|--------|-------------|------------|
| 11/22/2011 | Immigration | Alien Inadmissibility | Dismissed | |
| 8/5/2019 | Marion County, Oregon 19CR39328 | DUII | Convicted, probation | 1 FTA, probation revoked |
| 10/1/2019 | Salem Municipal Court | DUII | Convicted, probation | Unknown |
| 4/22/2022 | Marion County, Oregon 20CR19114 | DUII (felony) | Convicted, probation | 1 FTA, 2 probation violations |
| 10/10/2022 | Marion County, Oregon 22CR06877 | DWS | Convicted, probation | |

| 12/4/2025 | Marion County, Oregon 25CR05114 | DWS | Convicted, probation | |
|---|---|---|---|---|

The defendant committed the charged offenses not only while on pretrial release in Clackamas County, but also while serving a term of felony probation in Marion County. His conduct demonstrates that he is either unwilling or unable to comply with the most basic condition of supervision: obeying the law. Moreover, the defendant has repeatedly violated court orders prohibiting him from driving due to his suspended license, further underscoring his disregard for judicial directives.

### III.    Law and Argument

#### A.    Rules of Evidence Do Not Apply at Detention Hearing

"The Federal Rules of Evidence do not apply in detention proceedings.  Fed. R. Evid. 1101(d)(3); 18 U.S.C. § 3142(f).  Accordingly, both the government and the defense may present evidence by proffer or hearsay.  *United States v. Winsor*, 785 F.2d 755, 756 (9th Cir. 1986); *see also United States v. Bibbs*, 488 F.Supp.2d 925, 925-26 (N.D. Cal. 2007).

#### B.    There is a Rebuttable Presumption of Detention

Under the Bail Reform Act, 18 U.S.C. § 3142, *et seq.*, which governs the detention of a defendant pending trial, the Court shall order a defendant detained if, after a hearing, it finds that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community."  Generally, the United States bears the burden of establishing danger to the community by clear and convincing evidence; risk of flight need only be proved by a preponderance of the evidence.  *United States v. Aitken*, 898 F.2d 104, 107 (9th Cir. 1990); *Winsor*, 785 F.2d at 757.

**Government's Pretrial Detention Memorandum**                                    **Page 6**

Where there is probable cause to believe that the defendant committed a Title 21 narcotics offense and the maximum penalty for that offense is a term of imprisonment of 10 years or more, or a violation of Title 18, United States Code, Section 924(c), the law creates a presumption that no condition or combination of conditions of release will reasonably assure the appearance of the person as required and the safety of the community.  18 U.S.C. § 3142(e)(3)(A) and (B).  In such a case, the burden of proof shifts to the defendant to rebut the presumption of detention.  *United States v. Carbone*, 793 F.2d 559, 560 (3d Cir. 1986). The criminal charges in this case create a presumption of pretrial detention.

Concern about the safety of the community is not limited to concerns about violence; rather it is the *risk* that a defendant will continue committing crimes while on release, such as drug dealing, that warrants their continued detention as a danger to the community.  *United States v. Hare*, 873 F.2d 796, 798-99 (5th Cir.1989) (Congress has determined "that drug offenders pose a special risk of flight and dangerousness to society.").  Congress included the presumption of detention in the Bail Reform Act with an eye towards the particular dangers posed by those charged with "major drug felonies," who "are often in the business of importing or distributing dangerous drugs, and thus, because of the nature of the criminal activity with which they are charged, they pose a significant risk of pretrial recidivism."  S.REP. NO. 98-225, 98th Cong., 1st Sess. (1983), *reprinted in* 1984 U.S.C.C.A.N. 3182, 3203 (Bail Reform Act)

The presumption in favor of detention, as both a flight risk and danger to the community, does not vanish if a defendant comes forward with some evidence to rebut it, but rather it remains an evidentiary factor to be evaluated.  *United States v. Jessup*, 757 F.2d 378, 384 (1st Cir. 1985); *see also United States v. Rueben*, 974 F.2d 580, 586 (5th Cir. 1992); *United States v. Rodriguez*, 950 F.2d 85, 88 (2nd Cir. 1991); *United States v. Hare*, 873 F.2d 796, 798 (5th Cir.

**Government's Pretrial Detention Memorandum**                                                    **Page 7**

1989).  Were the presumption to vanish, "courts would be giving too little deference to Congress' findings regarding this class." *United States v. Martir*, 782 F.2d 1141, 1144 (2d Cir. 1986).

The degree of danger posed by a defendant charged with narcotics trafficking is critical. *United States v. Leon*, 766 F.2d 77, 81 (2nd Cir. 1985).  To determine that degree and decide if a defendant should be detained pending trial, a judicial officer must look to the nature and circumstances of the crime charged; whether the crime involved violence or drugs; the personal history of the person, the seriousness of the danger posed by the person's release; and, the evidence of the individual's guilt.  *Id*.

If the defendant proffers evidence to initially rebut the presumption of dangerousness or risk of non-appearance, the Court should then examine the following four factors in deciding whether release is appropriate:

(1)    the nature and circumstances of the offense charged, including whether the offense . . . involves . . . a controlled substance . . . ;

(2)    the weight of the evidence against the person;

(3)    the history and characteristics of the person, including –

(A)    the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearances at court proceedings; and

(B)    whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal . . . ; and

(4)    the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release.

18 U.S.C. § 3142(g).

**Government's Pretrial Detention Memorandum**                                              **Page 8**

IV.    **Argument**

The defendant's conduct demonstrates a consistent failure to comply with court-ordered conditions and reflects that he poses a danger to the community. At the most basic level, anyone released from custody—whether on pretrial release or probation—must obey all laws. The defendant has repeatedly shown that he either cannot or will not conduct himself as a law-abiding citizen.

Congress created a presumption of detention for certain offenses with individuals like this defendant in mind. He was found in possession of large quantities of methamphetamine and fentanyl while on felony state probation, posted a $15,000 bail, and immediately returned to selling drugs and endangering the community. This is not a case of an addict selling drugs out of necessity to support a habit. The defendant is engaged in deliberate, profit-motivated criminal activity, openly disregarding the terms of his release.

His history makes clear what will occur if the Court releases him again. He will return to drug trafficking, violate the conditions of pretrial release, ignore the requirements of his felony probation, and continue driving with a suspended license. He has shown no willingness to abide by court directives.

/ / / /

/ / / /

**Government's Pretrial Detention Memorandum**                                    **Page 9**

## V.    Conclusion

For the reasons set forth herein, we respectfully request the Court find that the defendant poses an unacceptable risk of non-appearance at future court hearings and that he is a danger to the community and that he should remain in pretrial custody pending trial.

Dated: June 9, 2026                            Respectfully submitted,

SCOTT E. BRADFORD
United States Attorney

*/s/ Lewis S. Burkhart*
LEWIS S. BURKHART, OSB #082781
Assistant United States Attorney

**Government's Pretrial Detention Memorandum**         **Page 10**